FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 21, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

CHRISTOPHER M. S.,

                    Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                  Defendant.

NO:  2:18-CV-309-FVS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 10 and 11. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney Dana C. Madsen.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

The Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 11, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 10.

## JURISDICTION

Plaintiff Christopher M. S.[2] protectively filed for supplemental security income on March 25, 2015, alleging an onset date of November 1, 2012.[3] Tr. 309-14. Benefits were denied initially, Tr. 208-211, and upon reconsideration, Tr. 215-17. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on February 14, 2017. Tr. 39-112. Plaintiff was represented by counsel and testified

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[3] As noted by the ALJ, Plaintiff's alleged onset date of November 1, 2012, is after the date Plaintiff attained age 22, on October 24, 2012. Tr. 16, 315-16. Accordingly, the ALJ dismissed Plaintiff's request for hearing under Title II for Child's Insurance Benefits under the Social Security Act, and noted the decision would address only the pending application for Title XVI benefits from the start of the relevant period beginning March 25, 2015. Tr. 16.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

at the hearing. *Id*. The ALJ denied benefits, Tr. 13-35, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 26 years old at the time of the hearing. Tr. 74. He finished high school and went to college for three years. Tr. 74. He testified that he dropped out of college because of the pain. Tr. 74. Plaintiff has work history as a nighttime security guard, fast food worker, assistant manager, busboy, and laborer. Tr. 77-79. At the time of the hearing, Plaintiff worked part-time as a pizza delivery driver. Tr. 76-77. He testified that he cannot perform his past work because of pain in his whole body. Tr. 79-80.

Plaintiff testified that the pain affects his entire musculoskeletal system, and the muscles in his body "crack, click, or just move in a very jerky fashion." Tr. 80. He reported that he is taking his medication as prescribed, and it has been reduced because of successful intramuscular stimulation treatment. Tr. 86. He rated his pain as five to six on a general day-to-day basis, and eight to ten at its worst. Tr. 87. Plaintiff testified that from 2011, until he started working again, he could not

walk more than 100 feet, could not stand more than five minutes, could barely lift five to ten pounds, and could "barely" sit in a chair.  Tr. 93-95.

### STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity from September 2016 through December 2016, but there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 18-19. At step two, the ALJ found that Plaintiff has the following medically determinable impairments: myofascial pain syndrome/fibromyalgia and polysubstance abuse. Tr. 19. However, at step two, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff does not have a severe impairment or combination of impairments. Tr. 19. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 25, 2015, the start of the relevant period, through the date of the decision. Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

# DISCUSSION

## A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21. As an initial matter, the Court notes that Plaintiff "concedes that there are no objective findings to substantiate his physical symptoms. Therefore, his claim should be based primarily upon his mental impairments." ECF No. 12 at 5-6. Thus, the Court will confine the analysis to the ALJ's evaluation of Plaintiff's alleged mental health limitations during the relevant adjudicatory period.

Here, the ALJ acknowledged that Plaintiff "underwent psychological exams, and there were some findings of depression and anxiety on exam. Doctors referenced his ongoing drug use/substance use and considered somatoform and personality disorders. He was described as dramatic, somatic focused, and minimized his drug use." Tr. 23 (citing Tr. 1288-91, 1324-26). However, the ALJ also noted that Plaintiff "has few mental health records from 2015, and they largely focus on his obtaining pain medication. [Plaintiff] continued to seek and abuse

opioids in 2015, and reported increased mental health symptoms." Tr. 23 (citing Tr. 1347-71, 1455-65, 1548-59). Plaintiff contends, without citation to legal authority or evidence in the record, that the ALJ improperly "discounted [Plaintiff's] testimony on the grounds that [Plaintiff] was using cannabis and narcotic medication for his pain"; and further, that the ALJ "has used [Plaintiff's] use of marijuana as an excuse to issue the unfavorable decision." ECF No. 10 at 17-18.

This argument mischaracterizes the ALJ's findings. The ALJ did not reject Plaintiff's subjective claims merely because he used cannabis and narcotic medication. Rather, as noted by Defendant, the ALJ discounted Plaintiff's subjective complaints because (1) Plaintiff was not compliant with the prescribed treatment recommendations, and (2) Plaintiff engaged in drug-seeking behavior.[4] ECF No. 11 at 2-4. Unexplained, or inadequately explained, failure to follow a

---

[4] In support of their arguments, both parties cite evidence that predates the relevant adjudicatory period. However, evidence prior to the alleged onset date is of limited probative value. *See*, *e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (holding that "[m]edical opinions that predate the alleged onset of disability are of limited relevance."). Thus, the Court will limit the analysis to evidence cited by the ALJ from the relevant adjudicatory period after March 25, 2015.

prescribed course of treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug seeking behavior undermines a claimant's credibility).

In support of this finding, the ALJ cited Plaintiff's admission during the relevant adjudicatory period that he took more opioids than the prescribed amount; treatment notes indicating "a history of polysubstance abuse and long term opiate use"; and multiple notations in treatment records that both Plaintiff and his mother became agitated when his pain medication was reduced. Tr. 1316, 1324, 1326-28, 1353-54, 1434, 1465, 1471. The ALJ also correctly noted that the record includes "few mental health records from 2015, and they largely focus on his obtaining pain medication." Tr. 23; *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). Plaintiff attended counseling intermittently from March 2015 through October 2015, at which point he was discharged and reported "maximum benefit from counseling for now with respect to his goals." 1347-55, 1455-59, 1548-59. Moreover, the Court's independent review of the counseling records confirms that they centered almost exclusively on Plaintiff's frustration with his inability to obtain pain medication,

and his agitation at efforts by his treating providers to reduce his pain medication.

1347-55, 1455-59, 1548-55.

For all of these reasons, the Court finds it was reasonable for the ALJ to discount Plaintiff's mental health symptom claims based on evidence that he sought medication, and failed to take medication according to the prescribed schedule. Moreover, the ALJ offered additional reasons for discounting Plaintiff's symptom claims.[5] First, the ALJ noted that Plaintiff "tried to reduce his medication tolerance, seek counseling, and increase his walking," and reported improved functioning. Tr. 23 (citing Tr. 1502). A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). As noted above, Plaintiff reported in October 2015 that he received "maximum benefit from counseling" and was subsequently discharged from mental health treatment. Tr. 1559. This was a clear, convincing, and entirely unchallenged reason for the ALJ to discount Plaintiff's symptom claims. *Carmickle v. Comm'r of Soc. Sec.*

---

[5] The parties briefly reference the ALJ's consideration of Plaintiff's daily activities. ECF No. 10 at 16-17; ECF No. 11 at 4-5. However, the Court's review of the record indicates this was not a reason given by the ALJ specifically to discount Plaintiff's mental health symptom claims.

*Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court may decline to address an issue not raised with specificity in the opening brief).

Second, the ALJ concluded that the "record lacks corroborative clinical objective evidence consistent with the degree of limitation alleged by" Plaintiff. Tr. 27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Plaintiff cites a single treatment record that observed he was "depressed, anxious, in pain and weeping," and argues this is an "objective finding[] based upon the observation of the counselors." ECF No. 10 at 18 (citing Tr. 1379). However, as noted by the ALJ, there are "few" mental health records during the relevant adjudicatory period, and the results of the mental status exam conducted by the examining psychologist were "largely normal." Tr. 26, 1528, 1532. Moreover, the medical expert at the hearing testified that the only medically determinable mental impairment based on the objective medical evidence was polysubstance abuse, and in his opinion there was "insufficient evidence to assess the severity of [Plaintiff's] mental depression from March 2015 forward." Tr. 24-25, 58-59, 67.

Based on the foregoing, and regardless of evidence that could be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's mental health symptom claims was inconsistent with objective medical evidence during the relevant adjudicatory period. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. The lack of corroboration of Plaintiff's claimed limitations by the clinical objective evidence was a clear, convincing, and largely unchallenged reason for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

Plaintiff generally argues that the ALJ "did not afford proper weight to examining sources as to their true opinion . . . , but afforded weight to non-examining non-treating consultants. This constitutes reversible error." ECF No. 10 at 19 (internal citation omitted). In his reply brief, without specific citation to the record, Plaintiff maintains that the ALJ "failed to properly consider and weigh the opinion evidence," and notes that his opening brief "include[s] the findings of John F. Arnold, Ph.D.; Kayleen Islam-Zwart, Ph.D.; and the findings of Frontier Behavioral Health." ECF No. 12 at 5. However, as correctly noted by Defendant, Plaintiff's briefing "does not identify any of the opinions to which his argument pertains, let alone explain how the ALJ erred in weighing them." ECF No. 11 at 5. Specifically, the Court finds that while Plaintiff's opening brief does summarize the opinion of Dr. John Arnold and treatment records from Frontier Behavioral Health, he entirely fails to "specifically and distinctly" identify or challenge any of the ALJ's findings with regard to these opinions. Thus, the Court declines to

consider this evidence. *See Kim*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). However, in an abundance of caution, the Court will review the ALJ's findings regarding Dr. Islam-Zwart's opinion, which was at least identified with the requisite specificity in the context of the ALJ's rejection of Plaintiff's symptom claims.

In May 2015, Dr. Islam-Zwart examined Plaintiff and opined that he had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 1527. The ALJ also opined that Plaintiff had moderate limitations in his ability to perform routine tasks without special supervision; adapt to changes in a routine work setting; and set realistic goals and plan independently. Tr. 1527. ALJ gave Dr. Islam-Zwart's opinion little weight for several reasons. Tr. 26.

Plaintiff appears to argue that the ALJ improperly "based the decision upon the opinion of non-examining non-treating" medical expert Dr. Glen Griffin's testimony, "instead of" the opinion of examining psychologist Dr. Islam-Zwart. *See* ECF No. 10 at 18; ECF No. 12 at 5. However, while an ALJ generally gives more weight to Dr. Islam-Zwart's opinion, as an examining psychologist, than to

Dr. Griffin's opinion, as a nonexamining medical expert, Dr. Griffin's opinion may nonetheless constitute substantial evidence if it is, as specifically noted by the ALJ in this case, consistent with other independent evidence in the record. Tr. 25 (giving great weight to Dr. Griffin's opinion because it was based on a comprehensive review of the longitudinal evidence of record); *see Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632–33. Moreover, "[t]he opinion of a nonexamining physician cannot *by itself* constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician." *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.1995) (emphasis added). However, where, as here, the examining physician's opinion is contradicted by medical evidence, the opinion may still be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995). The ALJ offered several additional reasons for rejecting Dr. Islam-Zwart's opinion.

First, the ALJ noted that Dr. Islam-Zwart "did not assess substance abuse or dependence, which is clear throughout the record." Tr. 26. Plaintiff argues Dr. Islam-Zwart "was aware that [Plaintiff] was using medical marijuana"; and she checked the "no" box in response to the question "are the current impairments primarily a result of alcohol or drug use within the past 60 days?" ECF No. 10 at 17-18; Tr. 1527, 1531. However, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495

F.3d at 631. While not identified by Plaintiff, the "Substance History" portion of Dr. Islam-Zwart's opinion includes Plaintiff's report that "he went to mental health [sic] they wanted to also treat him for withdrawal from the hydrocodone, but it was not really an issue for him other than not being able to sleep." Tr. 1531. As discussed in detail above, this report is inconsistent with Plaintiff's history of overusing hydrocodone, and treatment notes from the relevant adjudicatory period documenting Plaintiff's ongoing agitation when providers refused or reduced his opioid medication. Thus, it was reasonable for the ALJ to discount Dr. Islam-Zwart's opinion because her failure to recognize substance dependence was inconsistent with the record as a whole. This was a specific and legitimate reason to grant Dr. Islam-Zwart's opinion little weight.

Moreover, even assuming, *arguendo*, that the ALJ erred in this reasoning, any error is harmless because the ALJ's ultimate rejection of Dr. Islam-Zwart's opinion was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63. The ALJ found that Dr. Islam-Zwart "did not have the opportunity to review the longitudinal record, and most of her findings were based on [Plaintiff's] self-report. Finally, the report is given little weight because the severity of her findings in inconsistent with the largely normal mental status exam." Tr. 26. Plaintiff fails to identify or challenge these reasons in his opening brief; thus, the Court may decline to consider this issue. *Carmickle*, 533 F.3d at 1161 n.2.

Even had Plaintiff not waived the issue, the Court finds the additional reasons offered by the ALJ for discounting Dr. Islam-Zwart's opinion were without legal error and supported by substantial evidence. First, the ALJ properly rejected Dr. Islam-Zwart's opinion because she did not review any medical records, and her evaluation was based "to a large extent" on Plaintiff's self-reports that have been properly discounted. *Tommasetti*, 533 F.3d at 1041. Second, the ALJ properly rejected Dr. Islam-Zwart's opinion because it was inconsistent with the largely normal mental status examination that she conducted as part of her evaluation, which included findings of normal thought process and content, normal orientation, normal perception and memory, normal fund of knowledge, normal concentration, and normal abstract thought. Tr. 26, 1528, 1532; *Id.*; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

These are specific, legitimate, and largely unchallenged reasons to reject the limitations opined by Dr. Islam-Zwart.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and

convincing reasons to discount Plaintiff's symptom claims, and properly weighed

the medical opinion evidence.  After review the court finds that the ALJ's decision

is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is

   **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to

counsel.  Judgement shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** January 21, 2020.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
